IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| BRENDAN J. JONES, | CV 19-44-BLG-TJC |
| Plaintiff, | |
| vs. | **ORDER** |
| ANDREW SAUL, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Brendan J. Jones ("Plaintiff") has filed a complaint pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting judicial review of the final administrative decision of the Commissioner of Social Security ("Commissioner") regarding the denial of his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433.  (Doc. 2.) The Commissioner has filed the Administrative Record ("A.R.").  (Doc. 13.)

Presently before the Court is Plaintiff's motion for summary judgment, seeking reversal of the Commissioner's denial and remand for further proceedings pursuant to sentence 4 of §405(g).  (Doc. 17.)  The motion is fully briefed and ripe for the Court's review.  (Docs. 18, 19.)

1

For the reasons set forth herein, and after careful consideration of the record and the applicable law, the Court finds Plaintiff's motion should be **GRANTED**, and the Commissioner's decision should be **REVERSED**.

## I.      PROCEDURAL BACKGROUND

On April 27, 2015, Plaintiff filed an application for disability insurance benefits. (A.R. 203-09.) Plaintiff alleged he had been unable to work since February 8, 2015. (A.R. 203.) The Social Security Administration denied Plaintiff's application initially on June 6, 2015, and upon reconsideration on January 27, 2016. (A.R. 109-133.)

On February 25, 2016, Plaintiff filed a written request for a hearing. (A.R. 140-41.) A hearing was held before Administrative Law Judge Michael A. Kilroy (the "ALJ") in Billings, Montana on August 3, 2017. (A.R. 57-108.)

On November 3, 2017, the ALJ issued a written decision finding Plaintiff not disabled. (A.R. 40-52.) The ALJ's decision became final on December 10, 2018, when the Appeals Council adopted the ALJ's findings and conclusions regarding whether Plaintiff is disabled. (A.R. 12-15.) Thereafter, Plaintiff filed the instant action.

Plaintiff argues the ALJ erred in evaluating (1) the medical opinion evidence, (2) Plaintiff's subjective symptom testimony, and (3) Plaintiff's mental impairments.

## II.   LEGAL STANDARDS

### A.   Scope of Review

The Social Security Act allows unsuccessful claimants to seek judicial review of the Commissioner's final agency decision.  42 U.S.C. §§ 405(g), 1383(c)(3).  The scope of judicial review is limited.  The Court must affirm the Commissioner's decision unless it "is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). *See also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) ("We may reverse the ALJ's decision to deny benefits only if it is based upon legal error or is not supported by substantial evidence."); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Tidwell*, 161 F.3d at 601 (citing *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997)).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to

support a conclusion." *Flaten*, 44 F.3d at 1457.  In considering the record as a whole, the Court must weigh both the evidence that supports and detracts from the ALJ's conclusions.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)).  The Court must uphold the denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*, 44 F.3d at 1457 ("If the evidence can reasonably support either affirming or reversing the Secretary's conclusion, the court may not substitute its judgment for that of the Secretary.").  However, even if the Court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a conclusion.  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

### B.    Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) he suffers from a medically determinable physical or mental impairment that can be expected to last for a continuous period of twelve

months or more, or would result in death; and (2) the impairment renders the

claimant incapable of performing the work he previously performed, or any other

substantial gainful employment which exists in the national economy.  42 U.S.C.

§§ 423(d)(1)(A), 423(d)(2)(A).  A claimant must meet both requirements to be

classified as disabled.  *Id.*

The Commissioner makes the assessment of disability through a five-step

sequential evaluation process.  If an applicant is found to be "disabled" or "not

disabled" at any step, there is no need to proceed further.  *Ukolov v. Barnhart*, 420

F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec.*

*Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).  The five steps are:

1.  Is claimant presently working in a substantially gainful activity?  If so,
    then the claimant is not disabled within the meaning of the Social
    Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b),
    416.920(b).

2.  Is the claimant's impairment severe?  If so, proceed to step three.  If not,
    then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c),
    416.920(c).

3.  Does the impairment "meet or equal" one of a list of specific
    impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the
    claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§
    404.1520(d), 416.920(d).

4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

## III.   FACTUAL BACKGROUND

### A.   The Hearing

A hearing was held before the ALJ on August 3, 2017 in Billings, Montana. (A.R. 57-106.)  Plaintiff testified that he lives with his mother in a single-story home.  (A.R. 64.)  Plaintiff's mother helps him with laundry and preparing meals. (A.R. 80.)  He said he does a little bit of cooking and hauls the garbage.  (A.R. 81.) He does not do any other household chores, and his son does the yard work.  (*Id.*) Sometimes he helps his mother with shopping.  (A.R. 89.)  The ALJ asked Plaintiff about a note in his medical records that indicated Plaintiff had repaired his mother's house and built a barn.  (A.R. 97.)  Plaintiff explained his mother had hired someone to do the work.  (A.R. 98.)

Plaintiff stated that he quit working as a night pusher on an oil rig in 2015 because he "just couldn't do it anymore" due to pain, mainly in his right leg.  (A.R.

6

66-68.)  The ALJ asked Plaintiff about a note in his medical records that indicated Plaintiff's employment ended because he had been laid off.  (A.R. 96-97.)  Plaintiff acknowledged he had been laid off, but stated he was planning to quit anyway. (A.R. 97.)

The ALJ noted that Plaintiff had a walking stick/cane, and Plaintiff stated he uses it whenever he goes outside his home.  (A.R. 69-70.)  Plaintiff stated that the more he walks, the more his hip hurts.  (A.R. 70.)  Plaintiff testified that he can sit and stand for about 45 minutes before needing to change positions.  (A.R. 84-85.) He estimated he can walk unassisted about a block.  (A.R. 85.)

Plaintiff testified that he drives approximately 25 miles into town, once or twice a week.  (A.R. 72.)  But he said he does not like to drive very much because his hands fall asleep when he holds the steering wheel.  (A.R. 71.)  Driving also causes his hips to hurt.  (A.R. 72.)  Plaintiff stated that he has problems gripping and grasping items, and has difficulty writing.  (A.R. 73-74.)

Plaintiff stated that he has issues with his memory, and at his last job he carried a notebook to keep track of what he needed to do.  (A.R. 78.)  He acknowledged, however, that he does not have problems remembering medical appointments or to take his medication.  (A.R. 78.)

With respect to mental health issues, Plaintiff testified that his depression and PTSD affect him on an intermittent basis.  (A.R. 82-83.)  He said that he has days where he is depressed and breaks down and cries, and this happens once or twice a month.  (A.R. 88-91.)

**B.    Medical Evidence[1]**

a.    <u>Penny Denning, PA-C</u>

Penny Denning, PA-C completed an independent medical consultative examination of Plaintiff on December 3, 2015.[2]  (A.R. 345-47.)  Ms. Denning noted Plaintiff had a history of right leg trauma caused by a horse accident in 2001.  (A.R. 345.)  Plaintiff suffered an open fracture of the tibia/fibula and then acquired a staph infection and pulmonary embolism, and was hospitalized for a year with a severe hypoxia episode.  Plaintiff also had a history of DeQuervain's disease of both hands and had surgery on the right.  Ms. Denning noted Plaintiff had a limp/abnormal gait because his right leg is shorter than the left and there were

---

[1] The Administrative Record includes Plaintiff's medical records from several health care providers.  The Court has summarized those records that are relevant to the specific issues presented for review.

[2] The medical consultative examination was co-signed by Dr. Bruce Swarney. (A.R. 347.)

signs of instability, especially if Plaintiff moved faster.  (A.R. 346.)   Ms.
Denning's physical exam revealed Plaintiff had no palpable back pain and was
able to forward bend and squat fairly well, but he could not do repeated reps.
Plaintiff could sit for a while but then had to get up due to discomfort in his hips.
Plaintiff had pain with straight leg raising on the right, and crepitus with external
rotation.  Plaintiff was not able to walk on toes and heels.  He had decreased
sensation and abnormal deep tendon reflexes on his right lower leg, with burning
pain and tingling at times.  Ms. Denning further noted Plaintiff had generalized
loss of flexibility in his hands and finger joints, with obvious loss of full function
with the left hand.  She further noted that x-rays of Plaintiff's lumbar spine showed
no acute concerns; x-rays of his right leg showed old healed fractures; and x-rays
of his right hip suggested hip impingement.  (A.R. 347.

        Ms. Denning recommended disability benefits for Plaintiff.  (A.R. 347.)  She
opined that she did "not think with his multiple issues he could walk, sit or stand
for any length of time to do a job effectively, and with his hand limitations also
limits his abilities to do paperwork type jobs."  (*Id.*)

/ / /

/ / /

  b.    Dr. Loretta L. Bolyard, Ph.D.

Dr. Loretta L. Bolyard, Ph.D. completed an independent mental status examination of Plaintiff on July 20, 2015.  (A.R. 334-37.)  Plaintiff reported to Dr. Bolyard that he had difficulty with short-term memory and attention.  (A.R. 334.)  Plaintiff stated he experienced cognitive decline after suffering a pulmonary embolism related to the leg fracture in 2001.  (*Id.*)  Dr. Bolyard noted that Plaintiff did not endorse symptoms consistent with a mood or psychotic disorder during his exam.  (A.R. 337.)  Dr. Bolyard administered a battery of tests which indicated Plaintiff's intellectual functioning was average, although he did have weakness on verbal memory.  (A.R. 336-37.)  Dr. Bolyard explained that the bulk of scores across Plaintiff's evaluation were considered well within expectation, and that his weakness on verbal memory tasks correlated with his subjective complaints of memory loss, and likely represented a decline from his previous level of performance.  (A.R. 337.)  Dr. Bolyard opined that Plaintiff "could pursue employment opportunities that are aligned with his strengths and weaknesses." (*Id.*)  She further opined Plaintiff "would certainly be expected to have difficulty in a high-paced or demanding environment, such as management, or another position that placed demands on verbal memory."  (*Id.*)

c.    <u>Tim Schofield, M.D.</u>

Dr. Tim Schofield, M.D. reviewed Plaintiff's medical records and issued an opinion on January 27, 2016, at the reconsideration level of review. (A.R. 120-132.) Dr. Schofield opined that Plaintiff could stand or walk for 3 hours, and sit for 6 hours in an 8-hour work day. (A.R. 128.) Dr. Schofield also reduced Plaintiff's postural limitations of climbing ladders/ropes scaffolds, balancing, and crawling to occasionally. (A.R. 129.)

d.    <u>Eastern Montana Community Mental Health Center</u>

Plaintiff obtained mental health treatment from the Eastern Montana Community Mental Health Center starting in April 2016. (A.R. 355-426.) Plaintiff saw Aliceann Carlton, LCPC for counseling and Laura Wetherelt, APRN, for medication management. Plaintiff initially reported feeling emotionally overwhelmed, unable to sleep, being significantly depressed and unable to think or accomplish daily tasks. (A.R. 422.) At the time, Plaintiff was struggling with an impending divorce and medical problems. (*Id.*) Plaintiff was initially diagnosed with major depression, single episode, severe without psychotic features, and PTSD, chronic was later added to his diagnoses. (A.R. 392, 426.) Plaintiff was given a trial of different medications, which were discontinued due to side effects.

(A.R. 362, 381, 388, 395, 407, 411.)

### C.    The ALJ's Findings

The ALJ followed the five-step sequential evaluation process in considering
Plaintiff's claim.  First, the ALJ found Plaintiff had not engaged in substantial
gainful activity since his alleged onset date of February 8, 2015.  (A.R. 42.)
Second, the ALJ found Plaintiff has the following severe impairments:
"osteoarthritis of the right leg, right hip, and hands."  (*Id.*)  The ALJ further
determined at step two, however, that Plaintiff's medically determinable mental
impairments were non-severe.  (A.R. 43-44.)  Third, the ALJ found Plaintiff does
not have an impairment or combination of impairments that meets or medically
equals any one of the impairments in the Listing of Impairments.  (A.R. 44-45.)
Fourth, the ALJ stated Plaintiff has the RFC to perform light work, with some
restrictions, including that Plaintiff can walk and stand for four total hours in an
eight-hour workday and sit six total hours in an eight-hour workday.  (A.R. 45.)
The ALJ next found that Plaintiff was unable to perform his past relevant work.
(A.R. 50-51.)  Finally, the ALJ found that based on Plaintiff's age, education, work
experience and residual functional capacity, there were jobs that existed in

12

significant numbers in the national economy that he could perform.  (A.R. 51.)

Accordingly, the ALJ found Plaintiff was not disabled.  (A.R. 52.)

## IV.   DISCUSSION

### A.   The ALJ's Evaluation of Medical Opinion Evidence

Plaintiff contends that the ALJ erred in discounting the opinions of Penny

Denning, Dr. Bolyard, and Dr. Schofield.  The Commissioner argues the ALJ's

consideration of the medical evidence was reasonable.

In assessing a disability claim, an ALJ may rely on "opinions of three types

of physicians: (1) those who treat the claimant (treating physicians); (2) those who

examine but do not treat the claimant (examining physicians); and (3) those who

neither examine nor treat the claimant (nonexamining physicians)."  *Lester v.*

*Chater*, 81 F.3d 821, 830 (9th Cir. 1995.)  The Commissioner applies a hierarchy

of deference to these three types of opinions.  The opinion of a treating doctor is

generally entitled to the greatest weight.  *Id*.  ("As a general rule, more weight

should be given to the opinion of a treating source than to the opinion of doctors

who do not treat the claimant."); *see also* 20 C.F.R. § 404.1527(c)(2).  "The

opinion of an examining physician is, in turn, entitled to greater weight than the

opinion of a nonexamining physician."  *Lester*, 81 F.3d at 830.

13

The ALJ must consider and evaluate any opinion by an examining physician or state agency medical consultant.  20 C.F.R. § 404.1513a (b)(1).  Further, the ALJ "must explain the weight given to these opinions in their decisions."  SSR 96-6P, 1996 WL 374180, *1 (S.S.A. July 2, 1996).  *See e.g. Foley v. Colvin*, 2015 WL 5836173, *3-5 (N.D. Tex. Oct. 2, 2015); *Archuleta v. Astrue*, 2013 WL 1283828, *4 (D. Colo. March 28, 2013).  The ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If an examining physician's opinion is contradicted by another doctor's opinion, it may only be rejected by specific and legitimate reasons that are supported by substantial evidence in the record.  *Id.*

      a.    <u>Penny Denning, PA-C</u>

In his decision, the ALJ gave the opinion of Penny Denning "little weight." (A.R. 47.)   The ALJ found Ms. Denning's opinion that Plaintiff was unable to work was not supported by the record.  The ALJ pointed out that Ms. Denning's opinion was inconsistent with another treatment provider's note which stated Plaintiff had done work on his mother's home, restored it, and built a barn.  (*Id.*) The ALJ further noted that that x-rays of Plaintiff's lumbar spine, hip and right leg showed no acute abnormalities.  (*Id.*)

14

An ALJ may afford a medical opinion less weight on the basis that it is inconsistent with the medical record as a whole.  20 C.F.R. § 404.1527(c)(4). *Hughley v. Colvin*, 628 F. App'x 519, 520 (9th Cir. 2016).  An ALJ may also reject a doctor's opinion that is inconsistent with a claimant's level of activity.  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).  Here, the ALJ adequately explained why he gave Ms. Denning's opinion less weight.

b.   <u>Dr. Loretta L. Bolyard, Ph.D.</u>

The ALJ gave Dr. Bolyard's opinion "partial weight."  (A.R. 48-49.)  The ALJ agreed with Dr. Bolyard's assessment that Plaintiff had mild limitations in cognitive functioning.  But the ALJ did not agree with Dr. Bolyard's opinion that Plaintiff had a limited ability to work in a high-paced or demanding environment.  (A.R. 49.)  Plaintiff argues the ALJ erred by not including a limitation to a low stress work environment in the RFC.

Social Security Ruling (SSR) 85-15 states that a person's ability to adapt to the stress of the workplace is to be thoroughly evaluated on an individualized basis.  SSR 85-15 at *5.  Accordingly, courts in the Ninth Circuit have found that "the issue of stress must be carefully considered and '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be

15

reflected in the RFC assessment." *Cottam v. Colvin*, 51 F.Supp.3d 1038, 1048-49 (E.D. Wash. 2014) (quoting SSR 85-15); see also *Perkins v. Astrue*, 2012 WL 4755402 at *2 (C.D. Cal. Oct. 2, 2012) ("ALJ erred in failing to make an individualized evaluation of the effects of stress on the plaintiff's ability to work and/or in failing to include this additional limitation in her RFC assessment.").

The ALJ failed to adequately explain why he rejected Dr. Bolyard's opinion regarding Plaintiff's ability to work in a demanding environment. The ALJ simply stated he "sees no limitation in the ability to work not even in high stress jobs." (A.R. 49.) But the ALJ did not cite to any contrary evidence in the record to support his finding. Rather, it appears that he rejected Dr. Bolyard's opinion based on his own lay opinion. "An ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000). *See also Banks v. Barnhart*, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An 'ALJ cannot arbitrarily substitute his own judgment for competent medical opinion', and he 'must not succumb to the temptation to play doctor and make [his] own independent medical findings.'") (internal citations omitted).

The Commissioner argues, however, that any error is harmless because Dr. Bolyard's opinion was equivocal.  The ALJ is not required to incorporate limitations phrased equivocally into the RFC.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 691-92 (9th Cir. 2009); *Glosenger v. Comm'r Soc. Sec. Admin.*, 2014 WL 1513995 at *6 (D. Or. April 16, 2014 (affirming the ALJ's rejection of limitations prefaced with language such as "might," "may," or "would also likely require.")  But here, Dr. Bolyard did not equivocate about Plaintiff's limitations.  Dr. Bolyard stated Plaintiff "would *certainly* be expected to have difficulty in a high-paced or demanding environment, such as management, or another position that placed demands on verbal memory."  (A.R. 337 (emphasis added).)  Accordingly, the ALJ's failure to provide specific and legitimate reasons for discrediting Dr. Bolyard's opinion is not harmless.

          c.      <u>Tim Schofield, M.D.</u>

The ALJ stated he found Dr. Schofield's assessment of Plaintiff's physical limitations persuasive, and therefore gave his opinion "greater weight."  (A.R. 49.) The Court finds no error with regard to the weight assigned to Dr. Schofield's opinion.  The problem arises, however, with regard to the RFC fashioned by the

ALJ.  Although the ALJ stated he gave Dr. Schofield's opinion greater weight, he did not limit the RFC based on the opinion.

The ALJ determined Plaintiff had the RFC to perform light work, and found Plaintiff could stand and/or walk for 4 hours.  But Dr. Schofield opined that Plaintiff was limited to standing and/or walking for 3 hours in an 8-hour workday.  (A.R. 128.)  But the ALJ (A.R. 45.)  The ALJ did not provide any explanation for this deviation.

A limitation to 3 hours of standing and/or walking could result in an RFC of sedentary work.  *See* SSR 96-9P ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday."); *Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984) ("'The ability to walk and stand up to approximately one-third of the work day (2–3 hours per day per 8-hour day) is also implied in sedentary work.'") (quoting the *Dictionary of Occupational Titles*).  Therefore, Dr. Schofield's assigned 3-hour limitation borders on the criteria for sedentary work.

Because the ALJ endorsed Dr. Schofield's opinion, but failed to consider all of the limitations identified by his assessment, and did not give any reasons for

18

doing so, the ALJ committed reversible error.  *Kruchek v. Barnhart*, 125 F. App'x 825, 828 (9th Cir. 2005).  Further, it appears the error is not harmless.  The Social Security Administration regulations recognize that:

> Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains.

20 C.F.R. Pt. 404, Subpt. P, App.2 § 201.00(g).

Therefore, if Plaintiff were limited to sedentary work, he may have met the criteria for disability by application of Medical Vocational Grid Rule 201.14, when he turned 50 on February 1, 2016.[3]

### B.    The ALJ's Credibility Determination

Plaintiff next argues that the ALJ's credibility determination was erroneous because the ALJ did not reasonably evaluate his subjective symptom testimony.

---

[3] There are three age categories for purposes of applying the Grids – younger persons (under age 50), persons closely approaching advanced age (age 50-54), and persons of advanced age (age 55 or older).  20 C.F.R. §§ 404.1563(c)-(e); 416.963(c)-(e). The Regulations acknowledge that as certain workers with significant impairments age, their ability to adjust to other work may be affected. 20 C.F.R. §§ 404.1563(c)-(e); 416.963(c)-(e).  The Grids, therefore, may require a finding of disabled for an older claimant, whereas a similarly situated younger claimant would not be disabled.  20 C.F.R. Pt. 404, Subpt. P, Appx. 2.

The Commissioner counters that the ALJ gave several clear and convincing reasons for discounting Plaintiff's testimony.

The credibility of a claimant's testimony is analyzed in two steps. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective evidence of an impairment or impairments that could reasonably be expected to produce the pain or other symptoms alleged. *Id.* Second, if the claimant meets the first step, and there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if he provides "specific, clear and convincing reasons" for doing so. *Id.* "In order for the ALJ to find [the claimant's] testimony unreliable, the ALJ must make 'a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'" *Turner v. Commissioner of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 n.3 (9th Cir. 2010). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834)).

To assess a claimant's credibility, the ALJ may consider (1) ordinary credibility techniques, (2) unexplained or inadequately explained failure to seek or

follow treatment or to follow a prescribed course of treatment, and (3) the

claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996);

*Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989). An ALJ may also take the

lack of objective medical evidence into consideration when assessing credibility.

*Baston v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

Here, the first step of the credibility analysis is not at issue. The ALJ

properly determined that Plaintiff's medically determinable impairments could

reasonably be expected to cause his symptoms, and there is no argument that

Plaintiff is malingering. Therefore, the ALJ was required to provide clear and

convincing reasons for rejecting Plaintiff's testimony regarding his symptoms.

The Court finds the ALJ did so.

The ALJ found Plaintiff's testimony regarding the degree of his limitations

was not persuasive. (A.R. 50.) In reaching his conclusion, the ALJ properly

identified specific aspects of Plaintiff's testimony he found not credible, and cited

specific evidence he believed contradicted that testimony. *Reddick*, 157 F.3d at

722; *Brown-Hunter*, 806 F.3d at 489.

For example, the ALJ noted Plaintiff testified he was unable to do much at

all. (A.R. 50.) The ALJ determined this conflicted with treatment records that

stated Plaintiff had repaired his mother's house.  (*Id.*)  Likewise, the ALJ noted

that Plaintiff testified he stopped working due to physical issues, but he told Dr.

Bolyard he had been laid off.  (A.R. 50.)  Both of the ALJ's observations are

supported by evidence in the record (A.R. 334, 424), and are legitimate reasons for

discounting a claimant's testimony.  *See Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001) (stating an ALJ may discount a claimant's subjective complaint

when they are inconsistent with his activities); *Bruton v. Massanari*, 268 F.3d 824,

826 (9th Cir. 2001) (finding the ALJ properly discounted the plaintiff's pain

testimony where the plaintiff left his job because he was laid off, rather than

because he was injured).

The fact that Plaintiff testified that he did not perform the work on his

mother's house, and gave a further explanation about how his job ended, does not

lead to the conclusion that the ALJ erred in assessing Plaintiff's credibility.  The

AJL acknowledged that Plaintiff denied doing the work on his mother's house at

the hearing, but the ALJ was not persuaded by Plaintiff's testimony.  "It is

the ALJ's role to decide credibility issues and to resolve conflicts in the

testimony."  *Tankabakyan v. Sullivan*, 936 F.2d 579 (9th Cir. 1991).  As long as

the ALJ's credibility finding is supported by substantial evidence in the record, this

22

court "may not engage in second-guessing."  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

With respect to Plaintiff's report of problems with his wrist and right leg, the ALJ pointed out that the results of x-rays and physical examinations were mostly normal.  (A.R. 50.)  The ALJ noted that Plaintiff reported he was doing well and had almost no pain after receiving an injection in his wrist.  (*Id.*)  With regard to Plaintiff's complaints of loss of memory, the ALJ pointed to Dr. Bolyard's opinion, which found Plaintiff had mild deficits in verbal memory tasks, but his overall working memory was adequate.  (*Id.*)  The ALJ's observations are supported by evidence in the record.  (*See* A.R. 307, 301, 309, 336-37, 339-41, 348-50, 430.)

The ALJ further noted that Plaintiff treated his pain conservatively.[4]  (*Id.*)  Evidence of conservative treatment may be "sufficient to discount a claimant's

_____

[4]The ALJ also noted Plaintiff was treating his depression conservatively with medication and was receiving counseling.  (A.R. 50.)  However, mental impairments, such as depression are typically treated with medication and counseling.  *See Valerie B. v. Berryhill*, 2018 WL 5085727, at *8 (W.D. Wash. Sept. 25, 2018), *report and recommendation adopted Bakko v. Berryhill*, 2018 WL 5081217 (W.D. Wash. Oct. 18, 2018) (noting there is no evidence that medication and therapy is a conservative course of treatment for depression and anxiety).  On this point, therefore, the ALJ's decision is not supported by substantial evidence. Nevertheless, the error is harmless.  The Ninth Circuit has recognized that "an

23

testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).  Plaintiff argues there appears to be reference to additional treatment by a neurologist and rheumatologist that the ALJ could have considered, but the ALJ made no effort to supplement the record.

The ALJ has a duty to develop the record further when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Here, however, Plaintiff does not explain what information the records would have provided, or elaborate on how the records would have been material to the ALJ's credibility determination.  Moreover, at the beginning of the hearing, Plaintiff's counsel indicated that there may have been some outstanding records that were not before the ALJ.  (A.R. 61.)  The ALJ twice stated that he would give counsel 30 days to provide any outstanding records.  (A.R. 61, 106.)  The following week, Plaintiff's counsel sent the ALJ a letter indicating his office had submitted all

---

ALJ's error [is] harmless where the ALJ provide[s] one or more invalid reasons for disbelieving a claimant's testimony, but also provide[s] valid reasons that [are] supported by the record." *Molina v. Astrue,* 674 F.3d 1104, 1115 (9th Cir. 2012). As discussed above, the ALJ provided other valid reasons for discounting Plaintiff's credibility concerning the severity and persistence of his limitations that are supported by the record.

outstanding medical records.  (A.R. 306.)  Thus, it does not appear the ALJ failed to adequately develop the record.

In sum, although this Court may not have evaluated the evidence in the same way as the ALJ, the Court may not substitute its own interpretation of the evidence for the ALJ's interpretation.  *Thomas*, 278 F.3d at 954.   Therefore, the Court finds that the ALJ's credibility finding is properly supported by specific, clear and convincing reasons.

### C.     The ALJ's Evaluation of Plaintiff's Mental Impairments

Finally, Plaintiff argues the ALJ failed to consider his depression a severe impairment.  The Commissioner asserts the ALJ properly determined that Plaintiff's mental impairments were mild.

Under step two of the sequential evaluation process, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments.  20 C.F.R 404.1520(c); 416.920. "An impairment or combination of impairments may be found 'not severe *only* if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'"  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).   The step two "inquiry is a de minimis screening device [used] to

25

dispose of groundless claims." *Smolen*, 80 F.3d at 1290. "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Web*, 433 F.3d at 687.

When evaluating the severity of mental impairments at step two, the ALJ must follow a "special technique." 20 C.F.R. § 404.1520a(a). First, the ALJ must determine whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of functional limitation in four broad functional areas: (1) understanding, remembering or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(b)(2), (c)(3). The ALJ rates the degree of limitation in each of these areas using the following five-point scale: "none, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the ALJ rates the limitations as "none" or "mild," the impairment is generally considered not severe, unless evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d)(1).

Here, the ALJ conducted a fairly thorough analysis at step two regarding the severity of Plaintiff's medically determinable mental impairments.  (A.R. 44.)  The ALJ discussed each of the four broad functional areas for evaluating mental disorders.  (*Id.*)   The ALJ concluded that Plaintiff suffered from mild limitations in understanding, remembering or applying information and concentrating, persisting or maintaining pace.  (*Id.*)  The ALJ found no limitations in interacting with others or adapting or managing oneself.  (*Id.*)  The ALJ's observations are consistent with evidence in the record.  (*See* A.R. 235-42, 260, 334-37.)  Accordingly, the ALJ's finding of non-severity was supported by substantial evidence.

Plaintiff relies on a Seventh Circuit case to argue that his clinical diagnosis of "severe" depression should have led to a finding of severity at step two.  *See O'Connor-Spinner v. Colvin*, 832 F.3d 690 (7th Cir. 2016).  The Ninth Circuit has held, however, that the existence of an emotional disorder "is not *per se* disabling." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  "In addition, there must be proof of the impairment's disabling severity."  *Id.*  Here, the ALJ addressed the degree of functional limitation in the four functional areas, and found no more than mild limitations in two areas.  Under the regulations, the ALJ's findings supported

27

his conclusion that Plaintiff's depression was non-severe.  20 C.F.R. §
404.1520a(d)(1).  Accordingly, the Court does not find the ALJ erred in
determining Plaintiff's depression was non-severe at step two.

Nevertheless, a finding of non-severity at step two does not relieve the ALJ
from further considering an impairment.  At step four of the sequential evaluation
process, the AJL must determine the claimant's RFC.  20 C.F.R. §
404.1545(a)(5)(i).   The RFC represents the most the claimant can do in a work
setting despite the claimant's physical and mental limitations.  20 C.F.R. §
404.1545(a)(1).  In assessing the RFC, the ALJ must consider the "limitations and
restrictions imposed by all of an individual's impairments, even those that are not
'severe.'  While a 'not severe' impairment(s) standing alone may not significantly
limit an individual's ability to do basic work activities, it may – when considered
with limitations or restrictions due to other impairments – be critical to the
outcome of a claim."  SSR 96-8P, 1996 WL 374184, * 5 (S.S.A. July 2, 1996). *See
also* 20 C.F.R. § 404.1545(e).

The Court finds the ALJ erred at step four in his consideration of Plaintiff's
non-severe mental impairments.  The ALJ considered Plaintiff's depression in
determining the RFC.  (A.R. 50.)  But because the ALJ erred in rejecting Dr.

28

Bolyard's opinion regarding Plaintiff's ability to work in a high-paced or

demanding environment, his assessment of Plaintiff's RFC may have been

adversely impacted.  It is possible that if the ALJ had credited Dr. Bolyard's

opinion, Plaintiff's non-severe mental impairments, when considered together with

his other limitations, may have resulted in a different RFC.  The Court, therefore,

finds the ALJ erred in his evaluation of Plaintiff's mental impairments.

## V.    REMAND OR REVERSAL

Plaintiff asks the Court to remand this case for further proceedings pursuant

to sentence 4 of 42 U.S.C. §405(g).  "[T]he decision whether to remand a case for

additional evidence or simply to award benefits is within the discretion of the

court."  *Reddick v. Chater*, 157 F.3d at 728.  If the ALJ's decision "is not

supported by the record, 'the proper course, except in rare circumstances, is to

remand to the agency for additional investigation or explanation.'" *Hill v. Astrue*,

698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Benecke v. Barnhart*, 379 F.3d 587,

595 (9th Cir. 2004)).  "If additional proceedings can remedy defects in the original

administrative proceedings, a social security case should be remanded.  Where,

however, a rehearing would simply delay receipt of benefits, reversal [and an

29

award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Court finds remand for further proceedings is appropriate. On remand, the ALJ shall properly evaluate the opinions of Dr. Bolyard and Dr. Schofield. The ALJ shall either support his findings with specific and legitimate reasons or afford Dr. Bolyard and Dr. Schofield's opinions greater weight. The ALJ shall also revisit Plaintiff's mental impairments in assessing Plaintiff's RFC.

## VI.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision be **REVERSED,** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

**IT IS ORDERED**.

DATED this 6th day of October, 2020.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge